## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KYLE FELDKAMP, | ) | |
| JOSH LESKO, | ) | |
| NORMAN FOHNE, | ) | |
| STEVE BURGDORF, | ) | |
| ELLEN ALLICKS, | ) | |
| ALLICKS EXCAVATING, and | ) | |
| TWIN MILLS TIMBER & TIE, CO., INC., | ) | |
| on behalf of themselves | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Urbana Division |
| v. | ) | |
| | ) | |
| | ) | |
| SMITTY'S SUPPLY, INC., | ) | |
| a Louisiana corporation, | ) | |
| Serve Registered Agent: | ) | |
| | ) | |
| -and- | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| RURAL KING ADMINISTRATION, | ) | |
| INC., an Illinois corporation; | ) | |
| RURAL KING HOLDING CO., an | ) | |
| Illinois corporation, | ) | |
| Serve Registered Agents: | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| TRACTOR SUPPLY COMPANY, a | ) | |
| Tennessee corporation, | ) | |
| -and- | ) | |
| | ) | |
| CAM2 INTERNATIONAL, L.L.C., a | ) | |
| Louisiana corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL

COME NOW Plaintiffs on behalf of themselves and all others similarly situated, and for their Class Action Complaint states and alleges as follows:

## INTRODUCTION

1.     For years, Defendants have deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as "303" fluid meeting "303" specifications when, in fact, the "303" designation is obsolete and 303 specifications have not been available for over forty (40) years. Defendants have also deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as meeting certain manufacturer specifications and providing certain anti-wear and protective benefits when, in fact, Defendants knew, or should have known, the fluid they are selling does not meet all listed manufacturer specifications and does not contain the anti-wear and protective properties required in Tractor Hydraulic Fluid.  Instead, the "303" fluid is a fluid mixed from line wash and other lubricant products (including some used products) that are not suitable for use as ingredients in a tractor hydraulic fluid.

2.     Tractor Hydraulic Fluid (THF) is a multifunctional lubricant that has been manufactured for and used in tractors and equipment for over fifty (50) years.  It is designed to act as a hydraulic fluid, transmission fluid and gear oil for this equipment.  In the 1960s and early 1970s, John Deere (Deere) manufactured a popular and widely used THF called JD-303, or simply "303." As a result, the term "303" became synonymous with the John Deere name and this high-quality and then effective THF product.

3.     Sperm whale oil was an essential ingredient in Deere's 303 THF.  In the mid-1970s, the passage of laws protecting endangered species outlawed the use of sperm whale oil.   Deere's "303" formula could thus no longer be manufactured or sold. Because its essential ingredient—

sperm whale oil—could no longer be used, the designation became obsolete and there are no specifications available for "303" tractor hydraulic fluids. Unable to continue utilizing sperm whale oil, Deere was forced to manufacture a new tractor hydraulic fluid with different additives that would be both effective and affordable.

4.      After it stopped producing and selling its 303 THF, Deere manufactured and sold several THF products with certain ingredient, viscosity, anti-wear and detergent additive specifications, including initially offering J14B, J20A and J20B. Many other manufacturers created and sold fluids that purported to be similar to these new products while others continued to offer a "303" product. The J14B specification became obsolete in the late 1970s. J20A and J20B were then offered and, during the time the J20A/B specifications were in use, Deere used a licensing program called Quatrol to police the quality of THF products in the marketplace. The Quatrol program required blenders and sellers of competing THF products to submit test data to Deere prior to the use of the J20A/B specification on their product labels, to ensure the products met the advertised specifications.

5.      In the late 1980s or early 1990s, Deere abandoned the J20A/B specification as well. John Deere then and now manufactures and sells THF meeting a specification called J20C or J20D (low viscosity). The J20C fluid is sold under the name "Hy-Gard," and many other manufacturers market and sell products while they contend meet the J20C specification in order to compete with John Deere. The following timeline illustrates the history of 303 THF:



**TRACTOR HYDRAULIC FLUID (THF) TIMELINE**

JOHN DEERE THF SPECIFICATIONS

Footnotes:
1. There are no specifications available for 303 Tractor Hydraulic Fluids and, as such, products making only "303" claims cannot be tested to assure compliance with any known specifications.
2. Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Summer or warm weather climates)
3. Low Viscosity Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Winter or cold weather climates)

| John Deere Specification | Comment | JD Issue Date |
|---|---|---|
| JDM J20D³ | THF for cold climates | 1989 - Current |
| JDM J20C² | Primary THF specification | 1989 - Current |
| JDM J20B³ | DISCONTINUED – replaced by JDM J20D | 1978 - 1989 |
| JDM J20A² | DISCONTINUED – replaced by JDM J20C | 1978 - 1989 |
| JDM J14B | DISCONTINUED – replaced by JDM J20A/B | 1974 - 1978 |
| JDM J303¹ | DISCONTINUED – replaced by JDM J14B | 1960 - 1974 |

6.      John Deere discontinued the Quatrol program around the time J20A was discontinued (approximately 1989). The subsequent lack of a quality control program or policing of the products in the market resulted in a "free for all" with respect to the THF manufactured and sold in the open market and the opportunity for unscrupulous manufacturers and sellers to falsely use the Deere specifications (and other manufacturers' specifications) on the labels of the THF products they sell.

7.       Defendants deceptively and illegally trade on the obsolete and non-existent "303" designation, the other obsolete J14B and J20A specifications, and the John Deere trade name that was and has continued to be so prevalent in the industry.  This was deceptive as there is no known "303" specification, there is no way for manufacturers, sellers, or anyone else to truthfully claim the product meets or is in compliance with any such specification.

8.      Nonetheless, Defendants manufacture and sell their Super S Super Trac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 Promax 303 Tractor Hydraulic Oil, and Cam2 303 Tractor Hydraulic Oil (together referred to as "303 THF Products") as a lower cost

4

alternative, and offer them for sale as economically priced tractor hydraulic fluids that meet many (or in some cases all) manufacturers specifications, have effective lubricant and anti-wear additives and properties, and are safe for use in purchasers' equipment.  While Cam2 Promax 303 Tractor Hydraulic Oil, Cam2 303 Tractor Hydraulic Oil, Super S 303 Tractor Hydraulic Fluid and Super S Super Trac 303 Tractor Hydraulic Fluid are four separate product names, they are all the same product:  the fluids come from the same ingredients, the same tanks, the same formulations and blends and the same manufacturing plant.  These THF Products have been sold with eye-catching photos of modern tractors and industrial equipment and are sold in bright, yellow 5-gallon buckets. By name dropping a list of equipment manufacturers, Defendants seek to create an impression of quality and take advantage of consumers' lack of understanding of the multitude of complex manufacturer specifications.

9.    In addition to deceptively promoting a designation that is obsolete, Defendants use poor quality base oils, waste oil, line flush, used oils and diluted additive packages in their 303 THF products in order to keep production costs down and increase profits.  As a result of the inferior ingredients and this "down-treating" of additive packages, Defendants' 303 THF Products not only lack the required lubricant and protective benefits offered to purchasers, the fluids actually expose purchasers' equipment to increased wear and risk of damage to the spiral gear, excessive wear in the planetaries, improper and poor shifting, seal leakage, and improper operation of the wet brakes. Despite use of these inferior ingredients and inadequate protective additives, the 303 THF Products are labeled and marketed to unsuspecting purchasers as meeting manufacturer specifications and providing certain benefits and anti-wear properties.

10.    In November 2017, because of the deceptive nature of the 303 THF Products, the failures of the 303 THF Products to meet any published specification, and the damage the products

5

could cause to consumers' equipment, the State of Missouri's Department of Agriculture, Division of Weights and Measures, banned Defendants and all other manufacturers and sellers from offering these type of "303" tractor hydraulic fluid products for sale in Missouri. The states of Georgia and North Carolina followed suit.

11.     Despite the ban of "303" THF in several states and the increased scrutiny on those products throughout the country, Defendants continued to sell their 303 THF Products in the state of Illinois and all other states where the fluid had not been banned.

12.     Defendants' conduct has harmed and continues to harm purchasers like Plaintiffs, who purchased Defendants' 303 THF Products that were offered and sold as an acceptable tractor hydraulic fluids that meet certain manufacturer specifications and as fluids that are safe for use in farm, construction and logging equipment and have certain characteristics and qualities that protect equipment from wear and damage.

13.     In reality, instead of receiving a product that was an acceptable tractor hydraulic fluid that met manufacturers' specifications, Plaintiffs and other purchasers received 303 THF Products that, contrary to Defendants' labeling, had no known specifications, had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications on these products and therefore exposed purchasers' equipment to harm, increased wear and damage, and caused purchasers to overpay for a product that was worthless and/or worth much less than the sale price.

14.     In late 2017, around the time of the stop sale order and ban of 303 THF in Missouri and other states, Defendant Smitty's modified the label of its 303 THF Products to remove the

pictures of the modern equipment and replaced those pictures with images of older, simpler tractors on the front of the label.

15.    At that time, however, no others changes were made to the labels and the names of equipment manufacturers and the claims of the fluids' performance remained on the labels despite the fact that management employees at Smitty's were also concerned about the deceptive and misleading representations on the labels regarding the physical and performance properties of the fluid, the representations about the testing that was purportedly performed on the fluid, and the list of equipment manufacturers' names contained on the label of the 303 THF Products.  By late 2017 and throughout 2018, Smitty's was discussing internally how its 303 THF Products did not meet any manufacturers' specification and how it did not have any test results or other data to substantiate the performance claims made on the labels.  Smitty's was also discussing internally how its 303 THF Products lacked detergent additives, exposed equipment to increased wear, was thinner than typical THF Products, and could lead to buildup and sludging in equipment. Incredibly, Smitty's continued to sell the 303 THF Products in Illinois and throughout the United States with those misrepresentations knowingly being made to purchasers like Plaintiffs.

16.    Like many other consumers throughout the country, Plaintiffs purchased Defendants' 303 THF Products in Illinois, and suffered damage as a result.

## PARTIES

17.    Plaintiff Kyle Feldkamp is a citizen and resident of Altamont, Illinois.

18.    Plaintiff Josh Lesko is a citizen and resident of Sheridan, Illinois.

19.    Plaintiff Norman Fohne is a citizen and resident of Troy, Illinois.

20.    Plaintiff Steve Burgdorf is a citizen and resident of Redbud, Illinois.

21.    Plaintiff Ellen Allicks is a citizen and resident of Princeton, Illinois.

22.     Plaintiff Allicks Excavating is a sole proprietorship business owned by Ellen Allicks and located in Princeton, Illinois.

23.     Plaintiff Twin Mills Timber & Tie Co., Inc. is a business located in West Frankfurt, Illinois.

24.     Defendant Smitty's Supply, Inc.  is a for-profit corporation incorporated in the state of Louisiana with its principal place of business located at 63399 Highway, 51 North, Roseland, Louisiana 70456. Smitty's was previously registered with the state of Illinois as a foreign corporation; however, its status with the state of Illinois was revoked on October 1, 2005. Defendant Smitty's Supply, Inc. owns Cam2 International, L.L.C. ("Cam2") and Cam2 is a division of Smitty's.  As such, "Smitty's" in this Complaint shall refer to both Smitty's Supply, Inc. and Cam2.  Smitty's has advertised and sold its products, including its Super S Super Trac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 Promax 303 Tractor Hydraulic Oil, and Cam2 303 Tractor Hydraulic Oil throughout the state of Illinois, including at Rural King, Orscheln, Tractor Supply Company, and other retail stores. Smitty's agent for service in Illinois is C T Corporation System, 208 South Lasalle St, Suite 814, Chicago, Illinois 60604. Smitty's agent for service in Louisiana is A. Bradley Berner, Attorney at Law, 1250 Southwest Railroad Avenue, Suite 230A, Hammond, Louisiana 70403.

25.     Defendants Rural King Administration, Inc. and Rural King Holding Co. (collectively "Rural King") are for-profit companies with retail locations throughout Illinois and have advertised and sold their 303 products throughout the state of Illinois, including at their Effingham, Illinois store. Rural King Administration, Inc. and Rural King Holding Co. are all incorporated in the state of Illinois with their principal place of business located at 4216 DeWitt Avenue, Mattoon, Illinois 61938. Rural King Administration, Inc.'s agent for service in Illinois is

RK Holdings, LLP, 4216 DeWitt Avenue, Legal Service, Mattoon, Illinois 61938. Rural King Holding Co.'s agent for service in Illinois is Don Davis, 4216 DeWitt Avenue, Mattoon, Illinois 61938.

26.     Defendant Tractor Supply Company ("Tractor Supply") is a for-profit company incorporated in the State of Delaware, authorized to do business in the state of Illinois, and with its principal place of business in Brentwood, Tennessee.  Defendant Tractor Supply Company has advertised and sold its products throughout the state of Illinois and the United States at its numerous retail stores.  Tractor Supply's agent for service in Illinois is CT Corporation System, 208 South LaSalle St., Suite 814, Chicago, Illinois 60604.

27.     Defendant Cam2 International, L.L.C. ("Cam2") is a for-profit company incorporated in Louisiana and with its principal place of business in Roseland, Louisiana.  Cam2 has advertised and sold its products, including its Cam2 Promax 303 Tractor Hydraulic Oil and Cam2 303 Tractor Hydraulic Oil, throughout the state of Illinois at various retail stores.  As noted above, Cam2 is owned by Smitty's.

28.     Defendants' conduct has harmed purchasers like Plaintiffs by inducing them to purchase and use Defendants' 303 THF Products through  the false promises and representations on the labels and advertising materials, including representations that the 303 THF Products are suitable for use as tractor hydraulic fluid, that the 303 THF Products meet certain specifications and by directly or implicitly representing that the products are safe for use in farm, construction and logging equipment and have certain characteristics and qualities that protect equipment from wear and damage when, in reality, the products do not meet any specifications, are made component products that are not suitable for use in blending tractor hydraulic fluid, and cause harm, increased wear and damage to Plaintiffs' equipment.

## JURISDICTION AND VENUE

29.     This action is filed in United States District Court for the Central District of Illinois, which is an appropriate venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the event or omissions giving rise to this claim, including but not limited to Defendants' false representations, deceptive, dishonest, and misleading practices and the unjust enrichment occurred in the Central District of Illinois. In addition, Defendant Rural King's residence is considered Coles County, Illinois for purposes of venue pursuant to 28 U.S.C. § 1391(b)(1).

30.     The United States District Court for the Central District of Illinois has personal jurisdiction over Defendants because Defendants transact business in the Central District of Illinois, through their various advertising methods and product sales directed toward Illinois residents, including residents in the Central District of Illinois.

31.     Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. section 11332(d).  Class members and Defendant Smitty's are from different states and the amount in controversy exceeds Five Million Dollars ($5,000,000.00), exclusive of interest and costs.

32.     A prior putative class action of Illinois purchasers involving Plaintiffs Feldkamp, Lesko, and Twin Mills Timber & Tie Co., Inc. was filed in the Southern District of Illinois on July 18, 2019 and voluntarily dismissed by Plaintiffs without prejudice pursuant to Fed. R. 41(a)(1)(A)(i) on December 12, 2019.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

33.     Defendants Rural King and Tractor Supply are in the business of selling and advertising for sale certain merchandise or retail products in trade or commerce at retail stores within the state of Illinois and throughout the United States.

34.    Defendant Smitty's (which as set forth above, includes Cam 2) is in the business of manufacturing certain merchandise or retail products which are to be sold in trade or commerce at retail stores within the state of Illinois and throughout the United States.

35.    During some or all of the time period from 2013 to the present, Defendants Rural King and Tractor Supply each sold and advertised in yellow buckets 303 THF Products called Super S Super Trac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 Promax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil.

36.    During some or all of the time period from 2013 to the present, Defendant Smitty's manufactured and advertised the Super S Super Trac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 Promax 303 Tractor Hydraulic Oil, and Cam2 303 Tractor Hydraulic Oil which was sold by Rural King, Orscheln, Tractor Supply, and other retailers.

## Defendants' Deceptive Labeling, Marketing and Advertising

37.    During some or all of the time period from 2013 to the present, Defendants offered the 303 THF Products for sale at stores all over Illinois and the United States as a product suitable for use as a tractor hydraulic fluid and as a fluid that provided certain performance benefits and met or had equivalency to a wide number of manufacturers' specifications.  The average sale price for a five (5) gallon bucket of Defendants' 303 THF Product was generally between $20.00 and $25.00.

38.    Defendants falsely and deceptively labeled, marketed and offered for sale the 303 THF Products (1) as meeting or having equivalency to manufacturer specifications and being acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) as a substitute for and satisfying or having equivalency to John Deere's JD-303 specifications; (3) as a fluid that provides extreme pressure and anti-wear protection for tractor

transmission, axles and hydraulic pumps; (4) as a fluid that protects against rust and corrosion; and (5) as a fluid designed for use in equipment manufactured by Allis-Chalmers, Massey Ferguson, Deutz, JI Case/David Brown, Allison, International Harvester, White, Kubota, John Deere, Oliver, Ford and Caterpillar.

39.    Defendants' labeling, marketing, advertising and sale of the 303 THF Product has been widespread, continuous and contained on various signs, labels and advertisements throughout the state of Illinois and the United States for years.

40.    Until the late 2017 to 2018 time period, Defendants' Super S Super Trac 303 Tractor Hydraulic Fluid was specifically labeled, marketed and advertised as follows:



### Super S® SuperTrac® 303 Tractor Hydraulic Fluid
**TECHNICAL PRODUCT INFORMATION**

**Super S SuperTrac 303 Tractor Hydraulic Fluid**
**Super S SuperTrac 303 Tractor Hydraulic Fluid** is designed to lubricate the transmission, differential and final drive gears in tractors and implements. It is a multi-functional fluid used as a hydraulic medium, and as a power steering, power brake, power take-off (PTO), and implement drive fluid.

**FEATURES/ BENEFITS**
- Lubricates the transmission, differential and final drive gears in tractors and implements
- Provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pump
- Protects against rust and corrosion
- Provides excellent results for foam suppression and water sensitivity
- Controlled frictional characteristics permit the wet brakes to hold properly, reduces brake chatter and provides for smooth engagement of power take-off (PTO) clutches.

**APPLICATIONS**
**SuperTrac 303 Tractor Hydraulic Fluid** is designed for use as a replacement fluid for the hydraulic, wet brake, and transmission requirements of equipment manufacturers where a product of this quality is recommended, including:

| | | |
|---|---|---|
| Allis Chalmers | Allison | Caterpillar |
| Deutz | Ford Tractor | International Harvester |
| J I Case/David Brown | John Deere 303, J20A | Kubota |
| Massey Ferguson | Oliver | White |

41.    The Super S Super Trac 303 buckets contain the following, similar information:



42.    During some or all of the time period from 2013 to present, the Cam2 Promax 303

Tractor Hydraulic Oil buckets contained the following, similar information:



43.    During some or all of the time period from 2013 to present, Defendants' websites and other advertising regarding Cam2 Promax 303 contained the following, similar information:

14

## PROMAX™ 303 Tractor Hydraulic Oil

CAM2 PROMAX™ TRACTOR HYDRAULIC 303 OIL is general-purpose lubricant for farm and industrial tractors and construction equipment. CAM2 PROMAX™ Tractor Hydraulic 303 Oil provides performance in the areas of anti-wear, PTO clutch, rust protection, extreme pressure properties, water sensitivity, foam suppression and brake chatter reduction. CAM2 PROMAX™ Tractor Hydraulic 303 Oil is recommended for ambient temperatures between +32°F and 104°F (0°C to 40°C). For ambient temperatures outside this range or where a premium tractor hydraulic/transmission oil is required, please use a CAM2 Premium Tractor Hydraulic Fluid. CAM2 PROMAX™ Tractor Hydraulic 303 Fluid is suitable as a replacement for the following manufacturers where a tractor hydraulic fluid of this performance level is recommended:



Allis Chalmers®
Allison®
Caterpillar®
Deutz®

Ford® Tractor
International Harvester®
JI Case®/David Brown®
John Deere® 303, J20A

Kubota®
Massey Ferguson®
Oliver®
White®

*Misapplication may cause severe performance problems. CAM2® PROMAX™ Tractor Hydraulic 303 Fluid has not been recommended by any OEM for model years later than 1974. For equipment built after 1974 requiring multi-functional fluid, use a CAM2® Premium Tractor Hydraulic Fluid.*

| | | |
|---|---|---|
| 3/1 GAL | 80565-16731 | |
| 3/2 GAL | 80565-16732 | |
| 5 GAL | 80565-16705 | |
| 55 GAL | 80565-16755 | |
| BULK | 80565-16711 | |

44.    From late 2017 through late 2018, Defendants 303 THF Product buckets contained the following information:



45.    These representations were also contained in Defendants' advertising circulars and/or on Defendants' websites.

46.    Defendants' labeling thus specifically represented that the 303 THF Products being sold were acceptable and suitable for use as a tractor hydraulic fluid and were:

- Field Tested

- Suitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality if recommended: Allis Chalmers, Allison, Caterpillar, Deutz, Ford Tractor, International Harvester, JI Case/David Brown, John Deere 303, Kubota, Massey Ferguson, Oliver, White

- Providing excellent results in the areas of:
    1. Anti-wear properties
    2. Brake Chatter
    3. Extreme Pressure Properties
    4. Foam Suppression
    5. PTO Clutch Performance
    6. Rust Protection
    7. Water Sensitivity

47.    By naming, labeling, marketing, advertising and selling the 303 THF Products in the foregoing manner, and by describing the product using words such as "303" and "multi-functional," Defendants sought to create, and did create, an image of the 303 THF Products in the minds of Plaintiff and other purchasers that would lead a reasonable purchaser to conclude that Defendants' 303 THF Products were completely safe and effective for use in their equipment and in all equipment made by the listed manufacturers.

48.    Defendants' THF Products name, labeling, advertising and marketing of their 303 THF Products was material to the reasonable purchaser.

49.    At the time of Defendants' labeling, advertisements, marketing and other representations, and as Defendants already knew or should have known, the representations regarding 303 THF Products were false, deceptive and misleading to consumers and others seeking to purchase tractor hydraulic fluid.

16

50.    The John Deere "303" designation is over 50 years old and has been obsolete for many years.  Certain ingredients of the original John Deere 303 fluid—such as sperm whale oil—have been banned since the 1970s and are no longer available for use.  As a result, manufacturers have been unable to make and sell true "303" fluid for over forty (40) years and there are no longer any specifications for 303 fluid.   Defendants knew or should have known that at the time they were marketing and selling the 303 THF Products during the Class Period, there were no specifications available for "303" tractor hydraulic fluid. Therefore, claims that the 303 THF Products met "303" specifications could not possibly be true, and Defendants had no way to ensure the accuracy of representations that their 303 THF Products were in compliance with any known specifications.

51.    As Defendants knew, or should have known, the 303 THF Products manufactured by Defendants and sold in the yellow buckets lacked some or all of the additives required to provide the advertised "results," "features" and "benefits."

52.    As Defendants knew, or should have known, the 303 THF Products manufactured by Defendants and sold in the yellow buckets were made using flush oil, line wash or other waste oil products containing motor oil components and other additives that are never appropriate for use in a tractor hydraulic fluid.

53.    As Defendants knew, or should have known, the 303 THF Products manufactured by Defendants and sold in the yellow buckets did not meet all current specifications (and failed to meet certain obsolete specifications) for any manufacturers of farm, logging and construction equipment.  Alternatively, Defendants knew, or should have known, they had no basis on which to sell the 303 THF Products as tractor hydraulic fluids that met the specifications of all manufacturers listed on the label because, on information and belief, either 1) Defendants' test

17

data showed the viscosity, pour point and additive levels of the 303 THF fluids varied, was inconsistent, and did not meet some or all of the specifications of the manufacturers listed on the labels; or 2) Defendants did not have any test data to confirm the 303 THF Products always had the viscosity, pour point or additive levels that met all manufacturers' specifications or that were needed for a fluid suitable for use in purchasers' equipment.

54.     At no point in time, on the label of the 303 THF Products or otherwise, did Defendants tell purchasers the truth, including that:

   a.   The "303" specification does not exist, is obsolete, could not be tested, and true 303 fluid was banned in the 1970s;

   b.   Defendants used low quality base oil, flush oil, line wash, used transformer oil, used turbine oil or other reclaimed oil in the 303 THF Products, all of which are unfit for use in hydraulic systems and should never be contained in a tractor hydraulic fluid;

   c.   The 303 THF Products contained a "down-treated" and/or no additive package;

   d.   Defendants' test data did not confirm all of the 303 THF Products met all manufacturers' specifications;

   e.   Defendants have no idea whether all of the 303 THF Products they offered for sale met the requirements of, has acceptable anti-wear properties, or is suitable for use in tractors or other equipment; and

   f.   The 303 THF Products may expose purchasers' equipment to increased wear and damage.

55.     Instead, the 303 THF Products were deceptively offered for sale as a fluid containing quality base oils, sufficient additives, and meeting or being equivalent to the long-

defunct and now unknown "303" specification and many other equipment manufacturer specifications.

## The State of Missouri's Testing of 303 THF

56.    Because of the poor, uncertain quality of 303 tractor hydraulic fluids and the deceptive way in which they are manufactured and sold, several private and governmental entities have been concerned about the sale of the fluids, the misleading nature of the labeling, and the damage the fluids can do to tractors and other equipment.  The Missouri Department of Agriculture (MDA) is one such entity.

57.    In the summer of 2017, the MDA sampled fourteen (14) different 303 THF products, many of which claimed to meet manufacturers' specifications and claimed to work in almost every tractor.  Defendants' 303 THF Products Super S SuperTrac 303 and Cam2 Promax 303 were purchased in Missouri by the MDA in 2017 and were two of the products tested.

58.    The MDA tested the fluids' viscosity, pour point, and additive and detergent levels to determine whether those levels met any current industry tractor hydraulic fluid specifications, namely, John Deere's J20C specifications.

59.    As a result of the testing, the MDA concluded that all fourteen (14) of these 303 THF products failed to meet any current specifications and were found to be underperforming to the point that damage was likely to result from use.

60.    Defendants' 303 THF Products were two of the fluids that failed to meet current specifications.  More specifically, Defendants' Super S SuperTrac 303 THF Product had a viscosity (Kinematic Viscosity @ 100C) level of 7.647.  Defendants' Cam2 Promax 303 THF Product has a viscosity (Kinematic Viscosity @ 100C) level of 7.633.  The J20C and J20A

specifications for KV@100C require a minimum of 9.1. Therefore, Defendants' 303 THF Products both fell short of the standard.

61.     Defendants 303 THF product was also found to have additive levels of calcium, phosphorous and zinc that were well below (50% or more less than) the additive levels found in fluids meeting the J20C specification.

62.     Furthermore, Defendants' 303 THF product's Kinematic Viscosity @ 100C level does not meet many or all of the specifications of the other manufacturers Defendants list on the labels and advertising of their 303 THF Product.

63.     The MDA also concluded that Defendants' THF product used waste, or "line flush" oil, which contains motor oil and other ingredients inappropriate for use in a tractor hydraulic fluid.

64.     The MDA notified Defendants, by letter, of their findings regarding the 303 THF products in the marketplace.  The MDA notified Defendants they felt the 303 THF Products were mislabeled, misbranded, and that the labels were deceptive and misleading and that the products were exposing equipment to increased wear and damage. As a result, the MDA ordered Defendants to stop selling their products in Missouri.

**Defendants Continue to Sell the Deceptive, Poor Quality 303 THF Products**

65.     Despite receipt of the MDA's stop sale notices, test results and concerns regarding the damage that was being caused to equipment, Defendants continued to manufacture and sell the product in Illinois and throughout the United States.  Defendants did not in any way change the formula, component products, or manufacturing process of the 303 THF Product after the State of Missouri's ban.

66.     Rather than pull the 303 THF Product off the market in all states, Defendants decided to continue to sell the 303 THF Product.  The colorful photos of modern tractors were

removed from the labels and were replaced with older, simpler tractors.  However, in all other respects, the product was the same and the labels continued to deceptively list the "303" designation, the equipment manufacturers' names, and the false and misleading claims of field testing and performance benefits.

67.    In addition, Defendants continued to sell the 303 THF Product and make those representations about the quality and performance properties of the product even though within Smitty's at the highest levels of management, Smitty's was acknowledging and admitting in late 2017 and early 2018 that it knew the product did not meet any manufacturer specifications, that the label was confusing to purchasers, and that it did not have any data or evidence on which to base or substantiate the performance qualities represented on the label.

68.    Specifically, Smitty's management admitted in an internal communication that Smitty's could make "no claims…in reference to performance…" with respect to Super S 303 and Cam2 303 THF.  Yet Defendants continued to sell the product to purchasers throughout the United States as a fluid recommended for use in almost all manufacturers' equipment, with representations of excellent performance in the areas of anti-wear properties, brake chatter, extreme pressure properties, foam suppression, PTO clutch performance, rust protection and water sensitivity.

69.    In 2018, in stark contrast to the quality represented to purchasers, Smitty's management employees also acknowledged internally that Super S 303 THF was a "non-detergent tractor hydraulic fluid," a "thinner" fluid that "will not provide the same level of wear protection at higher operating temperatures" and a fluid that can lead to "excess deposit buildup inside transmissions and other critical components."

**Plaintiffs' Experience with Defendants' Labeling and Products**

70.    Plaintiffs purchased Defendants' 303 THF Products on numerous occasions.

21

71.     As with all Members of the Class, in the period prior to the filing of this Class Action, Plaintiffs purchased Defendants' 303 THF Products containing the label representations set forth above.

72.     Plaintiff Kyle Feldkamp purchased one of Defendants' 303 THF Products. In the time period of Spring 2014 to the present, Plaintiff Feldkamp purchased several 5-gallon buckets of the Cam2 Pro Tech 303 Tractor Hydraulic Oil and the Cam2 303 Tractor Hydraulic Oil at the Rural King retail store located in Effingham, Illinois.

73.     The 303 THF Product was used by Plaintiff Feldkamp in his tractor and other equipment.

74.     Plaintiff Fohne purchased one of Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Fohne purchased 5-gallon buckets of the Cam2 Promax 303 Tractor Hydraulic Oil and the Cam2 303 Tractor Hydraulic Oil at the Rural King retail store located in Collinsville, Illinois. Also, in the time period of December 2013 to the present, Plaintiff Fohne purchased 5-gallon buckets of the Super S Supertrac 303 Tractor Hydraulic Fluid and Super S 303 Tractor Hydraulic Fluid at the Tractor Supply Store located in Belleville, Illinois.

75.     The 303 THF Products were used by Plaintiff Fohne in his tractor.

76.     Plaintiff Steve Burgdorf purchased one of Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Burgdorf purchased 5-gallon buckets of the Super S Supertrac 303 Tractor Hydraulic Fluid and Super S 303 Tractor Hydraulic Fluid at the Tractor Supply Store located in Belleville, Illinois.

77.     The 303 THF Products were used by Plaintiff Burgdorf in his two tractors.

78.     Plaintiff Josh Lesko purchased one of Defendants' 303 THF Products. In the time

period of December 2013 to the present, Plaintiff Lesko purchased several 5-gallon buckets of the Cam2 Promax 303 Tractor Hydraulic Oil and the Cam2 303 Tractor Hydraulic Oil at the Rural King retail store located in Plano, Illinois.

79.     The 303 THF Product was used by Plaintiff Lesko in his New Holland and John Deere tractors, dump trucks and boom trucks, and other equipment.

80.     Plaintiffs Ellen Allicks and Allicks Excavating purchased one of Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiffs Allicks and Allicks Excavating purchased 5-gallon buckets of the Cam2 Pro Tech 303 Tractor Hydraulic Oil and Cam2 303 Tractor Hydraulic Oil at the Rural King retail store located in Peru, Illinois.

81.     The 303 THF Product was used by Plaintiffs Allicks and Allicks Excavating in excavating equipment.

82.     Plaintiff Twin Mills Timber & Tie Co., Inc purchased one of Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Twin Mills Timber purchased hundreds of 5-gallon buckets of the Cam2 Pro Tech 303 Tractor Hydraulic Oil at the Rural King retail store located in Benton, Illinois.

83.     The 303 THF Product was used by Plaintiff Twin Mills Timber & Tie Co., Inc in John Deere forklifts, skidders, Caterpillars, and other equipment.

84.     As a result of Defendants' manufacturing and offering the 303 THF Products for sale, Plaintiff purchased a tractor hydraulic fluid that was falsely and deceptively offered for sale as a "303" fluid that contained quality base oils and additives, met required specifications and was safe for use in equipment when, in reality, the fluid offered was of uncertain quality, lacked adequate viscosity and additives, contained line wash or flush oil, had a value much less than the price offered for sale, and was likely to expose equipment to increased risk of wear and damage.

85.    Plaintiffs reasonably relied upon Defendants' representation that the fluid was a "303" fluid and Defendants' own labeling, statements and advertisements concerning the particular qualities and benefits of the 303 THF Products.

86.    All reasonable purchasers would consider Defendants' 303 THF Products to be suitable for use in tractors and other equipment and would not have any understanding or way to know that Defendants' 303 THF Products were of uncertain quality, lacked adequate viscosity and additives, contained line wash or flush oil, had a value much less than the price offered for sale, and/or that use of Defendants' 303 THF Products would expose all equipment to increased wear and damage.

87.    A reasonable purchaser would consider Defendants' labeling, statements and advertisements when looking to purchase a tractor hydraulic fluid.  As a result of using Defendants' 303 THF Products, Plaintiffs and Class Members:  (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) were deprived of the benefit of the bargain because the 303 THF Products were different than what Defendants represented; (d) were deprived of the benefit of the bargain because the 303 THF Product had less value than what was represented; (e) did not receive a product that measured up to their expectations as created by Defendants; and/or (f) suffered increased and excessive wear and/or damage to their equipment, including damage to gears, seals and hydraulic systems.

88.    When Defendants manufactured, named, labeled, marketed, advertised, distributed, and sold Plaintiffs and Class Members their 303 THF Products, Defendants knew or should have known those products (1) did not meet manufacturer specifications and were  not acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) were not an adequate substitute for and did not satisfy John Deere's JD-303 specifications; (3)

were not adequate to provide extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) were not adequate to protect against rust and corrosion; and (5) were not appropriate for use in equipment of manufacturers including Allis-Chalmers, Massey Ferguson, Deutz, JI Case/David Brown, Allison, International Harvester, White, Kubota, John Deere 303, J20A, Oliver, Ford and Caterpillar.

89.    Plaintiffs used the 303 THF Products in the manner in which Defendants advised it could and should be used.

90.    As a result of Defendants' 303 THF Products not meeting specifications as labeled, advertised, marketed, warranted, and promised, Defendants violated consumer protection acts, breached express and implied warranties, fraudulently or negligently induced Plaintiff and Class Members to purchase their products through material misrepresentations, acted in a negligent manner, and were unjustly enriched.

91.    Defendants' manufacture, labeling, and sale of the 303 THF Products was deceptive and misleading in at least the following respects:

> (a) Defendants' use of "303" in the name of the product was deceptive and misleading. The 303 THF Products did not use John Deere 303's formula and would not meet or be the equivalent to the specifications for John Deere 303. Defendants packaged their 303 THF Products in the yellow bucket with illustrations of modern tractors and equipment so as to further deceive and mislead and create the impression that the 303 THF Products were legitimate tractor hydraulic fluids that met the specifications for John Deere 303 and other John Deere equipment.

(b) Defendants placed a deceptive and misleading statement on the product labels by claiming that John Deere 303 is one of the specifications for which the 303 THF Products are "[s]uitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended."

(c) Defendants placed a deceptive and misleading statement on the product labels by listing eleven (11) other manufacturers as those for which the 303 THF Products are "[s]uitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended," without specifying the equipment/specifications purportedly met for each of those eleven (11) manufacturers.

(d) Defendants engaged in deceptive and misleading conduct in failing to provide an adequate notice, disclaimer, or warning on the labels.

(e) Defendants placed a deceptive and misleading statement on the product labels by listing manufacturers of equipment in which the 303 THF Products purportedly may be used, when in reality the products do not meet many of the specifications for the listed manufacturers' modern or older model equipment.

(f) Defendants made a deceptive and misleading statement on the product labels by representing that the products have been field tested.

(g) Defendants made a deceptive and misleading statement on the product labels when claiming that the 303 THF Products "will provide excellent results in the areas of:

- Anti-wear properties
- Brake Chatter
- Extreme Pressure Properties
- Foam Suppression

26

- PTO Clutch Performance
- Rust Protection
- Water Sensitivity"

(h) Defendants engaged in misleading and deceptive conduct with regard to their 303 THF Products in failing to disclose that the product contained flush oil, line flush, waste oil and/or contained other materials that should never be contained in tractor hydraulic fluid.

92.     The conduct listed in paragraph 83(a)-(h) constitutes unfair, false, misleading, and deceptive acts and practices in the conduct of trade or commerce in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq*.

93.     This action is brought by Plaintiffs against Defendants to recover all money paid by Plaintiff and Class Members to Defendants for purchase of their 303 THF Products which were labeled, marketed, advertised, and sold in the dishonest, misleading, and deceptive manners noted herein, for recovery of the damage caused to equipment owned by Plaintiffs and the Class Members, for punitive damages, attorneys' fees, costs, and for all other remedies available to those aggrieved by Defendants' conduct.

## **CLASS ACTION ALLEGATIONS**

94.     Plaintiffs bring this Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class of similarly situated persons:

> All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in the United States at any point in time from December 1, 2013 to present, excluding purchases of Super S Supertrac 303 Tractor Hydraulic Fluid made in Missouri.

95.     Plaintiffs also seek certification of the following state-specific Sub-Class of

27

similarly situated persons:

> All persons and other entities who purchased Super S Supertrac
> 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic
> Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2
> 303 Tractor Hydraulic Oil in Illinois at any point in time from
> December 1, 2013 to present.

96.     Also excluded from the Class and Sub-Class are Defendants, including any parent,

subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents,

employees and their immediate family members, as well as the judicial officers assigned to this

litigation and members of their staffs and immediate families.

97.     The 303 THF Products at issue were sold across Illinois and the United States

through retailers.  The Class and Sub-Class Members may be identified through use of sales

receipts, affidavits, or through sales records.

98.     The proposed Class and Sub-Class are so numerous that joinder of all Class

Members is impracticable.  Although the exact number and identity of each Class Member is not

known at this time, there are thousands of Members of the Class and Sub-Class.

99.     There are questions of fact and law common to the Class and Sub-Class which

predominate over questions affecting only individual Class Members.  The questions of law and

fact common to each Class arising from Defendants' actions include, without limitation, the

following:

> a.   The components and qualities of Defendants' 303 THF Products, and the
>      cost to Defendants to manufacture, distribute, market and sell their 303 THF
>      Products;
>
> b.   Whether Defendants were unjustly enriched;
>
> c.   Whether Defendants were negligent;
>
> d.   Whether Defendants breached the express warranties provided with regard
>      to the 303 THF Products;

e.  Whether Defendants breached the implied warranty of merchantability with regard to the 303 THF Products;

f.  Whether Defendants breached the implied warranty of fitness for particular purpose with regard to the 303 THF Products;

g.  Whether Defendants deliberately failed to disclose material facts to consumers regarding the quality of the 303 THF Products and the obsolete nature of the products and the specifications the products claimed to meet;

h.  Whether Defendants' manufacturing, labeling, advertising, marketing, and/or sale of their 303 THF Products was deceptive, unfair, and/or dishonest;

i.  Whether Defendants studied or tested their labeling and the effect of the labeling on consumers' perceptions, and whether Defendants studied the susceptibility of consumers who might purchase tractor hydraulic fluid;

j.  Whether Defendants' representations regarding their 303 THF Products were false and made knowingly by Defendants;

k.  Whether Defendants' representations were false and made negligently by Defendants; and,

l.  Whether use of the 303 THF Product caused and/or exposed equipment to damage.

100.    The representative Plaintiffs' claims are typical of those in the putative Class and Sub-Class because each purchased Defendants' 303 THF Products and was similarly treated.

101.    Plaintiffs are each adequate representatives of the Class and Sub-Class because each's interests do not conflict with the interests of other Members of the Class or Sub-Class. The interests of the other Class Members will be fairly and adequately protected by Plaintiffs and counsel, who have extensive experience prosecuting complex litigation and class actions.

102.    A Class Action is the appropriate method for the fair and efficient adjudication of this controversy. It would be impracticable, cost prohibitive, and undesirable for each Member of the Class to bring a separate action. In addition, the presentation of separate actions by individual

29

Class Members creates the risk of inconsistent and varying adjudications, establishes incompatible standards of conduct for Defendants, and/or substantially impairs or impedes the ability of Class Members to protect their interests. A single Class Action can determine, with judicial economy, the rights of the Members of the Class.

103.    A Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

104.    Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class. The Class Action is based on Defendants' acts and omissions with respect to the Class as a whole, not on facts or law applicable only to the representative Plaintiffs. All Class Members who purchased Defendants' products were treated similarly. Thus, all Class Members have the same legal right to an interest in relief for damages associated with the violations enumerated herein.

105.    Class certification is also appropriate for class-wide injunctive relief pursuant to Rule 23(b)(2).

106.    Plaintiffs assert in Counts I through VIII, below, the following claims on behalf of themselves and the Class and Sub-Class:

- Count I – Negligence

- Count II – Breach of Express Warranty

- Count III – Breach of Implied Warranty of Merchantability

- Count IV – Breach of Implied Warranty of Fitness for Particular Purpose

- Count V – Unjust Enrichment

- Count VI – Fraud/Misrepresentation

30

- Count VII – Negligent Misrepresentation

- Count VIII – Illinois Consumer Fraud and Deceptive Business Practices Act (On Behalf of Sub-Class of Illinois Purchases Only)

## COUNT I
### (Negligence)

107.    Plaintiffs incorporate by reference all paragraphs of this Class Action Complaint as if fully set forth herein.

108.    Defendants owed a duty of at least reasonable care to the purchasers of their 303 THF Products, including a duty to use reasonable care in the manufacture, sampling, testing, labeling and marketing of the finished 303 THF Products.

109.    Defendants breached this duty by the acts and omissions alleged herein, including but not limited to:

a.    Distributing and using misleading labeling information regarding the 303 THF Products qualities and OEM specifications met by product;

b.    Failing to adequately warn and instruct purchasers about the true nature of the 303 THF Products and potential harm to equipment caused by use of the 303 THF Products in equipment for which it does not meet specifications;

c.    Failing to adequately ensure the 303 THF Products manufactured and sold met the advertised specifications;

d.    Failing to utilize adequate testing and other controls to ensure the 303 THF Products met the advertised specifications; and,

e.    Instituting and/or allowing careless and ineffective product manufacturing protocols.

110.    As a result of Defendants' negligence, Defendants' 303 THF Products had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications.

111.    Defendants' negligence caused or contributed to cause injuries and damages to Plaintiffs and the Class Members and caused Plaintiffs' and the Class Members' equipment to suffer harm and damage, including wear, damage and leakage in the seals, exposure to damage in the spiral gear in the drive, improper and poor shifting, wear and damage to the wet brakes, high pump leakage, and damage from deposits, sludging and thickening. Defendants' negligence also caused or contributed to cause Plaintiffs and the Class Members to overpay for a product that was worthless and/or worth much less than the sale price.

112.    Plaintiffs and Class Members are thus entitled to an award of compensatory damages, prejudgment interest and post-judgment interest.

113.    Defendants' conduct was grossly negligent and showed a complete indifference to or conscious disregard of the rights of others, including Plaintiffs and Class Members, such that punitive damages are thus warranted.

## COUNT II
### (Breach of Express Warranty)

114.    Plaintiffs incorporate by reference all paragraphs of this Class Action Complaint as if fully set forth herein.

115.    Plaintiffs and Class Members purchased Defendants' 303 THF Products.

116.    As set forth above, Defendants made common statements of facts regarding quality and use in the name and on the label of the 303 THF Products.

117.    The common statements Defendants made in the name and on the label of the 303 THF Products were made to induce Plaintiffs and Class Members to purchase the 303 THF Products and/or were a material factor in inducing Plaintiffs and Class Members to purchase the 303 THF Products, and therefore became part of the basis of the benefit of the bargain and an express warranty.

118.    As set forth above, the THF 303 Products did not conform to the statements of Defendants.  As a result, Plaintiffs and the Class Members did not receive goods as warranted by Defendants.

119.    Defendants have received from Plaintiffs timely notification of the defects in their THF 303 Products.

120.    The failure of the THF 303 Products to conform to the statements of Defendants has caused injury and damage to Plaintiffs and Class Members.

## COUNT III
**(Breach of Implied Warranty of Merchantability)**

121.    Plaintiffs incorporate by reference all paragraphs of this Class Action Complaint as if fully set forth herein.

122.    Defendants directly or indirectly sold the 303 THF Products to Plaintiffs and Class Members for use as described above.

123.    As set forth above, at the time Defendants sold the 303 THF Products, the products were not fit for their ordinary use and the use described by Defendants.

124.    Plaintiffs and Class Members used the 303 THF Products for their ordinary purpose and the use described by Defendants.

125.    Defendants have received from Plaintiffs timely notification of the defects in their 303 THF Products.

126.    The failure of the 303 THF Products to be fit for their ordinary purpose has cause injury and damage to Plaintiffs and Class Members.

## COUNT IV
### (Breach of Implied Warranty of Fitness for Particular Purpose)

127.    Plaintiffs incorporate by reference all paragraphs of this Class Action Complaint as if fully set forth herein.

128.    Defendants directly or indirectly sold the 303 THF Products to Plaintiffs and Class Members for use as described above.

129.    As set forth above, at the time Defendants sold the 303 THF Products, the products were not fit for their particular purpose for use as universal hydraulic fluid for tractors and/or other equipment.

130.    Defendants knew or should have known of the uses for which the 303 THF Products were purchased.

131.    Plaintiffs and Class Members reasonably relied upon Defendants' judgment that the 303 THF Products were fit for use as universal hydraulic fluid for tractors and/or other equipment.

132.    Defendants have received from Plaintiffs timely notification of the defects in their 303 THF Products.

133.    The failure of the 303 THF Products to be fit for their particular purpose has caused injury and damage to Plaintiffs and Class Members.

## COUNT V
### (Unjust Enrichment)

134.    Plaintiffs incorporate by reference all paragraphs of this Class Action Complaint as if fully set forth herein.

34

135.    As a result of Defendants' deceptive, fraudulent, and misleading naming, labeling, advertising, marketing, and sales of the 303 THF Products, Plaintiffs and the Class Members purchased Defendants' 303 THF Products and conferred a benefit upon Defendants by purchasing obsolete and harmful tractor hydraulic fluid, which benefit Defendants appreciated and accepted.

136.    Those benefits were obtained by Defendants under false pretenses because of Defendants' concealments, misrepresentations, and other deceptive, misleading, and unfair conduct relating to the 303 THF Products.

137.    Defendants were enriched at the expense of Plaintiffs and other Class Members through the payment of the purchase price for Defendants' 303 THF Products.

138.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and Class Members have suffered damages in an amount to be determined at trial.

139.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs and the other Class Members, in light of the fact that the 303 THF Products purchased by Plaintiffs and the other Members of the Class were not what Defendants represented them to be.  Thus, it would be inequitable or unjust for Defendants to retain the benefit without restitution to Plaintiffs and the other Members of the Class for the monies paid to Defendants for the 303 THF Products.

140.    By reason of the foregoing, Defendants should be required to account for and disgorge all monies, profits, and gains which they have obtained at the expense of Plaintiffs and Class Members.

## COUNT VI
### (Fraudulent Misrepresentation)

141.    Plaintiffs incorporate by reference all paragraphs of this Class Action Complaint as if fully set forth herein.

142.    Defendants made representations regarding their 303 THF Products, as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and that the 303 THF Products provided certain qualities, results and benefits.

143.    Defendants' representations set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, that the 303 THF Products provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were false and made knowingly by Defendants, and were therefore fraudulent.

144.    Defendants' representations as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, and that the 303 THF Products met specifications, that the 303 THF Products provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant with the intent that Plaintiffs and other Class Members rely on such representations.

145.    Defendants' representations as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, that the 303 THF Products provided certain

qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant despite knowing the representations were false at the time the representations were made, and/or without knowledge of the truth or falsity of the representations.

146.     Defendants' representations were material to the purchase of the 303 THF Products.

147.     Plaintiffs and Class Members relied on Defendants' representations, and such reliance was reasonable under the circumstances.

148.     Defendants' conduct as set forth herein with regard to the name, labeling, marketing and sale of the 303 THF Products constitutes fraud on Plaintiffs and all Class Members.

149.     Plaintiffs and Class Members have been economically damaged by Defendants' fraudulent conduct with regard to the marketing and sale of the 303 THF Products.

150.     As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and Class Members have suffered ascertainable losses of money and other damages.

151.     Defendants' conduct as described herein was intentional and/or in reckless disregard for the rights of Plaintiffs and other Class Members.

152.     Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

**COUNT VII**
**(Negligent Misrepresentation)**

153.     Plaintiffs incorporate by reference all paragraphs of this Class Action Complaint as if fully set forth herein.

154.     Defendants made representations regarding their 303 THF Products, as set forth above, including without limitation the representations that the 303 THF Products were fit to be

37

used in older tractors and other equipment, that the 303 THF Products met specifications, that the

303 THF Products provided certain qualities, results and benefits.

155.    Such representations were made by Defendants with the intent that Plaintiffs and

the Class Members rely on such representations in purchasing Defendants' 303 THF Products.

156.    Such representations were material to Plaintiffs' and the Class Members' purchase

of Defendants' 303 THF Products.

157.    Such representations were false.

158.    Defendants failed to use ordinary care and were negligent in making and/or

allowing to be made the representations set forth above.

159.    Plaintiffs and the Class Members relied on such representations and such reliance

was reasonable under the circumstances.

160.    Plaintiffs and Class Members have been economically damaged by Defendants'

negligent conduct with regard to the marketing and sale of the 303 THF Products.

161.    As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and

Class Members have suffered ascertainable losses of money.

<u>**COUNT VIII**</u>
**(Violations of Illinois Consumer Fraud and Deceptive Business Practices Act)**
**(On Behalf of Sub-Class Who Purchased in Illinois)**

162.    Plaintiffs incorporate by reference all paragraphs of this Class Action Complaint

as if fully set forth herein.

163.    Plaintiffs and Sub-Class Members are "persons" and "consumers" under

the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 (c)

and (e).

164.    Defendants engaged in "trade" or "commerce" within the meaning of the ICFA,

815CS 505/1 (f).

165.    Section 2 of the ICFA provides, in pertinent part:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not

limited to the use or employment or any deception, fraud, false pretense, false promise,

misrepresentation or the concealment,  suppression or omission of any material fact, with

intent that others rely upon the concealment, suppression or omission of such material fact,

or the use or employment of any practice described in Section 2 of the "Uniform Deceptive

Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce

are hereby declared unlawful whether any person has in fact been misled, deceived or

damages thereby."

166.    Defendants sold the obsolete and harmful THF Products in Illinois and throughout

the United States during the Class Period.

167.    Defendants' sales of the THF Products meet the definition of "sale" within the

meaning of the ICFA, 815 ILCS 505/1 (d).  Defendants' THF Products at issue meet the definition

of "merchandise" for purposes of the ICFA, 815 ILCS 505/1 (b).

168.    In selling their THF Products and by virtue of the conduct set forth

above, Defendants have used deception, fraud, false pretense, misrepresentation or the

concealment, suppression or omission of material facts, either expressly or by implication.

169.    Defendants intentionally and knowingly used deception, false pretense, false

promise, misrepresentation and/or concealment of material facts regarding the 303 THF Products

with intent to mislead Plaintiffs and all Sub-Class Members.

170.    At all times material hereto, it was reasonably foreseeable that Plaintiffs, and others similarly situated, would rely on the false and fraudulent statements made by Defendants. Said reliance has caused Plaintiffs, and others similarly situated, to be damaged.

171.    The actions of Defendants were done willfully, intentionally and with reckless disregard for harm that would be caused by Plaintiffs, and others similarly situated, and Defendants' conduct warrants imposition of exemplary damages to deter Defendants, and others in similar circumstances, from committing such actions in the future.

172.    In addition, as a result of Defendants' unlawful, unfair and deceptive business practices, Plaintiffs and Sub-Class Members, pursuant to 815 ILCS 505/1 (a), are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore Plaintiffs and Sub-Class Members any money paid for the 303 THF Products.

173.    Plaintiffs have standing to pursue this claim as each has suffered actual economic damage as a proximate result of Defendants' actions as set forth herein.

174.    An award of punitive damages is also appropriate.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class and Sub-Class described in this Class Action Complaint, respectfully request that:

A.  The Court certify the Class and Sub-Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adjudge Plaintiffs and counsel to be adequate representatives thereof;

B.   The Court enter an Order requiring each Defendant to pay actual, general, special, incidental, punitive, statutory, treble and consequential damages to which Plaintiffs and Class/Sub-Class Members are entitled;

C.   The Court enter an Order awarding Plaintiffs, individually and on behalf of the other Members of the Class/Sub-Class, the expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent provided by law;

D.   The Court enter an Order awarding to Plaintiffs, individually and on behalf of other Members of the Class/Sub-Class, pre-and post-judgment interest, to the extent allowable; and,

E.    For such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues of fact and damages in this action.

Date:  June 22, 2020                    Respectfully submitted,

BOLEN ROBINSON & ELLIS, LLP

/s/ *Jon D. Robinson – Lead Counsel*
Jon D. Robinson – ARDC No. 2356678
Zachary T. Anderson - ARDC No.  6329384
202 S. Franklin St., 2nd Floor
Decatur, IL 62523
Phone: 217-429-4296
Fax: 217-329-0034
Email: jrobinson@brelaw.com
            zanderson@brelaw.com

41

HORN AYLWARD & BANDY, LLC

BY:     */s/ Dirk Hubbard – Pro Hac Vice Pending*
     Dirk Hubbard, MO Bar #37936
     Thomas V. Bender, MO Bar #28099
     2600 Grand, Ste. 1100
     Kansas City, MO 64108
     (816) 421-0700
     (816) 421-0899 (Fax)
     dhubbard@hab-law.com
     tbender@hab-law.com

WHITE, GRAHAM, BUCKLEY, & CARR, L.L.C

BY:     */s/ Bryan T. White – Pro Hac Vice Pending*
     Bryan T. White     MO Bar #58805
     Gene P. Graham, Jr.   MO Bar #34950
     William Carr      MO Bar #40091
     19049 East Valley View Parkway
     Independence, Missouri 64055
     (816) 373-9080 Fax: (816) 373-9319
     ggraham@wagblaw.com
     bwhite@wagblaw.com

**ATTORNEYS FOR PLAINTIFFS
AND CLASS MEMBERS**